UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

                     v.                          No. 14 Cr. 741 (KMK)

IRVING RUBIN, et al.,

                Defendants.

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'
JOINT MOTION FOR A BILL OF PARTICULARS**

HAFETZ & NECHELES LLP
Susan R. Necheles
Kathleen E. Cassidy
10 East 40th Street, 48th Floor
New York, NY 10016
Tel. (212) 997-7400

*Attorneys for Defendant Yehuda Rubin*

October 23, 2015

**TABLE OF CONTENTS**

I. Factual Background ...............................................................................1

    A. The Charges in the Indictment ...............................................................1

    B. Request for Bill of Particulars ................................................................3

    C. Government Document Productions .......................................................4

II. Requested Particulars ............................................................................5

III. The Requested Particulars are Necessary to Allow Defendants to Adequately Prepare for Trial .................................................................7

    A. Applicable Law .....................................................................................7

    B. The Court Should Order the Government to Produce the Requested Particulars ..............................................................................................7

Conclusion .................................................................................................13

# TABLE OF AUTHORITIES

Fed. R. Crim. P. 7(f) .................................................................................................. 7

*United States v. Bortnovsky*, 820 F.2d 572 (2d Cir. 1987) (per curiam) ................................ 7, 12

*United States v. Cephas*, 937 F.2d 816 (2d Cir. 1991) ................................................... 7

*United States v. Barnes*, 158 F.3d 662 (2d Cir. 1998) ................................................... 7

*United States v. Bin Laden*, 92 F. Supp. 2d 225 (S.D.N.Y. 2000) ................................... 7

*United States v. Nachamie*, 91 F. Supp. 2d 565 (S.D.N.Y. 2000) ............................... 12

*United States v. Trie*, 21 F. Supp. 2d 7 (D.D.C. 1998) .................................................. 13

Defendants Irving Rubin, Yehuda Rubin, Pinchus Glauber, Martin Kofman, Joel Koppel, Benzion Kraus, Herman Mauskopf, Abraham Rubin, Desiree Rubin, Jacob Rubin, Joel Rubin, Rachel Rubin, Rifka Rubin, Rivky Rubin, and Samuel Rubin (collectively, "Defendants") respectfully submit this Memorandum of Law in Support of Defendants' Joint Motion for a Bill of Particulars.[1]

## I. Factual Background

### A. The Charges in the Indictment

Numerous members of the Rubin family and extended family, as well as real estate attorney Martin Kofman and real estate appraiser Pinchus Glauber – fifteen defendants in all – are charged in a twenty-one count indictment ("Indictment" or "Ind.") that alleges principally that they participated in a conspiracy to defraud banks and to make false statements to banks in order to obtain mortgages and other loans under false pretenses. Several defendants are charged with theft of public money based on allegedly false statements made to obtain public benefits. The charges in the Indictment span the ten-year period from 2004 to 2014.

Count One alleges a conspiracy under 18 U.S.C. § 1349 to commit bank and wire fraud in violation of 18 U.S.C. §§ 1343 and 1344. All defendants except one, Herman Mauskopf, are charged in the Count One conspiracy. The Indictment alleges that defendants fraudulently obtained mortgage loans and other loans from banks and other lenders by providing materially false information to lenders about their assets and liabilities, including their employment, income, and primary residence. Ind. ¶ 2. The Indictment alleges that defendants collectively

---

[1] Counsel for Yehuda Rubin submits this memorandum on his behalf, and on behalf of counsel for all other defendants in this action. *See* Declaration of Kathleen E. Cassidy dated Oct. 23, 2015 ("Cassidy Decl.") ¶ 9.

1

obtained more than $20 million in fraudulent loan proceeds from "more than twenty fraudulent loans" as a result of the Count One conspiracy. Ind. ¶ 2.

Count One includes a list of 18 properties with a total of 25 loans on those properties and the subject matter of alleged misrepresentations in connection with those loans, but states that this is not a complete list of fraudulent loans obtained through the conspiracy nor a complete list of the alleged subjects of misrepresentations. Ind. ¶ 8 (Defendants "fraudulently obtained mortgage loans and other loans in connection with numerous properties, *including but not limited to* the properties described below, making misrepresentations concerning, *among other subjects*, the subjects below.") (emphasis added).

Count Two alleges an 18 U.S.C. §371 conspiracy to make false statements to lenders in violation of 18 U.S.C. § 1014. Again, all defendants except Herman Mauskopf are charged in this Count. The Indictment alleges that the charged defendants knowingly made false statements and reports for the purpose of influencing the actions of FDIC-insured institutions. Ind. ¶ 14. The Indictment alleges 14 overt acts in furtherance of the conspiracy, which appear to be statements made or other actions taken in connection with some of the loans enumerated in Count One. Ind. ¶ 15.

Counts Three through Eleven allege substantive bank fraud violations related to several of the loans enumerated in the Count One conspiracy. (18 U.S.C. § 1344). The individuals charged with substantive bank fraud counts are: Yehuda Rubin and Rachel Rubin (husband and wife), Irving Rubin and Desiree Rubin (husband and wife), and Joel Koppel.

Counts Twelve through Fifteen are substantive counts of false statements to lenders. (18 U.S.C. § 1014.) Defendants Yehuda and Rachel Rubin, and Irving and Desiree Rubin are charged in these counts. Each of these counts alleges that the charged defendant(s) made false

statements to the identified lender in order to obtain loans.  The Indictment specifies certain false statements with respect to each lender, but states that this is not an exclusive list of false statements made.  Ind. ¶ 19 (defendants made "false statements, *including but not limited to* the false statements listed" in order to obtain loans) (emphasis added).

Count Sixteen charges defendant Joel Koppel with aggravated identity theft in violation of 18 U.S.C. § 1028A, alleging that he "submitted or caused to be submitted fake lease agreements. . . in connection with an application by Koppel to obtain a loan."  Ind. ¶ 21.

Counts Seventeen through Twenty-One charge Yehuda and Rachel Rubin, Joel and Rivky Rubin, Pinchus Glauber, Herman Mauskopf, and Samuel Rubin with one count each of theft of public money in violation of 18 U.S.C. § 641.  The Indictment alleges that these defendants "falsely reported and omitted information about their income, assets, and or other financial information to obtain Medicaid and Food Stamps benefits to which they were not entitled."  Ind. ¶ 23.

**B.  Request for Bill of Particulars**

By letter dated July 23, 2015, defendants requested that the government provide additional particulars on the charges in the Indictment.  Cassidy Decl. ¶ 2 and Ex. A.  Defendants tailored their requests narrowly to the allegations in the Indictment, focusing on the alleged misrepresentations and false statements allegedly made to obtain loans or public benefits.  Cassidy Decl., Ex. A.  The government responded on July 31, 2015, and declined to provide any of the requested particulars, stating that the "Indictment in this case is sufficiently particular, and we will not provide an additional bill of particulars."  Cassidy Decl. ¶ 3 and Ex. B.

3

### C. Government Document Productions

The discovery received to date is voluminous and difficult to review. The government has produced over 615,000 pages of paper discovery (produced in electronic format). These documents consist primarily of approximately 270,000 pages of documents that the government received as a result of compliance with subpoenas and about 320,000 pages of paper documents that were seized in searches. Cassidy Decl. ¶ 5. These 615,000 pages of discovery have not been provided in a format that is reviewable using review software and therefore are not word-searchable. Cassidy Decl. ¶ 5. With respect to the paper documents seized in the searches, the government has not identified where at the search location the documents were located, so defense counsel does not know which documents were seized from which defendant. Cassidy Decl. ¶ 5.

In addition, the government recently produced approximately 39,000 documents[2] consisting of electronic documents from computers or other electronic storage devices seized in the searches of two locations where members of the Rubin family are alleged to have worked. Cassidy Decl. ¶ 6. The government has not yet disclosed whether these are all of the electronic documents seized in the searches of those two locations. At this point, defense counsel cannot identify the electronic documents in the production that relate to specific computers or other electronic media seized at the two search locations, and thus cannot identify any individual defendant's computer or documents on which to focus our review.[3] Cassidy Decl. ¶ 6. Defense

---

[2] Page count information is not available for these documents.

[3] Defense counsel has requested that the government provide information as to which electronic materials have been provided and where they were seized from, so that we can attempt to identify which devices belonged to which defendants. The government responded that they would look into these questions and get back to us. Cassidy Decl. ¶ 6.

counsel is still awaiting the production of the materials seized in the search of the Lowenthal & Kofman law firm, but presumably those materials will be voluminous as well. Cassidy Decl. ¶ 8.

The government also produced a set of organized PDF files on 23 properties (approximately 2800 pages in total) that it alleges were the subject of fraudulent loans obtained. Cassidy Decl. ¶ 7.

## II. Requested Particulars

Defendants request that the Court order the government to provide the following particulars:

*Count One*

(a) Identify:

    (i)    each property for which defendants allegedly obtained or conspired to obtain a loan by fraud, and identify the allegedly fraudulent loan or loans on that property;

    (ii)    the alleged misrepresentations made as to each loan and where such misrepresentations appear;

    (iii)    the co-conspirators who allegedly participated in each fraudulent loan.

(b) With respect to the allegation in paragraph 4(c) of the Indictment that the defendants engaged in "sham transfers of ownership of properties from one member of the conspiracy to another, or to other trusted individuals, thereby confounding attempts by lenders to recover on defaulted loans and facilitating further fraudulent borrowing against the properties," identify:

    (i)    the property that was transferred;

    (ii)    the year in which the sham transfer occurred;

    (iii)    the person who transferred the property; and

    (iv)    the person to whom it was transferred.

(c) With respect to the allegation in paragraph 4(d) of the Indictment that the defendants engaged in "coordinated efforts to deceive [a] lender into granting a satisfaction of the debt at a significant loss," identify:

5

(i) The defendants alleged to have engaged in these "coordinated efforts";

(ii) What the alleged "coordinated efforts" were;

(iii) The banks allegedly defrauded.

*Count Two*

(a) Identify each allegedly false statement or report and any document(s) that contain such false statements or reports.

(b) Identify the co-conspirators who allegedly participated in or conspired to make the false statement or report.

*Counts Three through Eleven*

(a) For each count, identify each alleged misrepresentation and any documents where it appeared.

*Counts Twelve through Fifteen*

(a) For each count, identify each allegedly false statement or report made to obtain a loan and any documents where such statement or report was made.

*Count 16*

(a) As to paragraph 21 of the Indictment, specify the allegedly fake lease agreements; identify the signatures of purported tenants made without their knowledge or consent; and identify the application by Koppel to obtain a loan.

*Counts 17-21*

(a) For each count, identify:

(i) The information about "income, assets, and or other financial information" which the defendants allegedly falsely reported and/or omitted to obtain Medicaid and Food Stamps benefits;

(ii) The document(s) if any on which this information was falsely reported and/or omitted; and

(iii) The agency and office to which this information was provided.

### III. The Requested Particulars Are Necessary to Allow Defendants to Adequately Prepare For Trial

#### A. Applicable Law

Defendants move pursuant to Federal Rule of Criminal Procedure 7(f) for an order compelling the government to provide a bill of particulars. Rule 7(f) "permits the defendant to seek a bill of particulars in order to identify with sufficient particularity the nature of the charge pending against him, thereby enabling [the] defendant to prepare for trial, to prevent surprise, and to interpose a plea of double jeopardy should he be prosecuted a second time for the same offense." *United States v. Bortnovsky*, 820 F.2d 572, 574 (2d Cir. 1987) (per curiam).

Whether to grant a bill of particulars rests within the sound discretion of the trial court. *United States v. Cephas*, 937 F.2d 816, 823 (2d Cir. 1991). Although a bill of particulars "is not intended. . . as a means of learning the government's evidence and theories, if necessary to give the defendant enough information about the charge to prepare his defense, it will be required even if the effect is disclosure of evidence or theories." *United States v. Barnes*, 158 F.3d 662, 665 (2d Cir. 1998) (internal quotations omitted). It is clear that the "Government does not fulfill its obligation merely by providing mountains of documents to defense counsel who [a]re left unguided as to which documents" are relevant. *Bortnovsky*, 820 F.2d at 574-75; *United States v. Bin Laden*, 92 F. Supp. 2d 225, 233-34 (S.D.N.Y. 2000) ("[I]t is no solution to rely solely on the quantity of information disclosed by the government; sometimes, the large volume of material disclosed is precisely what necessitates a bill of particulars.").

#### B. The Court Should Order The Government to Provide The Requested Particulars

Here, the particulars requested are absolutely necessary to allow defendants to adequately prepare for trial and prevent surprise. A total of 14 defendants, 12 of whom are family members whose personal and business dealings are interrelated to varying degrees, are charged with

offenses related to false statements made to obtain loans over a span of ten years. All of defendants' requested particulars related to the loan counts – counts 1 through 16 – are narrowly tailored to seek basic information necessary to defend against these charges: namely, which defendants are alleged to have participated in which criminal loan transactions, and what were the misrepresentations that the government alleges were criminal?

Similarly, the defendants charged with theft of public money in Counts 17-21 seek to have the government identify the false statements allegedly made or information omitted to obtain public benefits.

Particulars are necessary because the Indictment fails to provide adequate notice of the criminal conduct that each defendant is alleged to have engaged in. Counts One and Two charge that 14 defendants participated in conspiracies to deceive banks that lasted for at least 10 years, and involved numerous loans obtained on a variety of properties. Count One contains the most complete listing of the loans and properties allegedly involved in the scheme, setting forth 18 properties with a total of 25 loans obtained. Ind. ¶ 8. However, neither Count One nor the Indictment as a whole disclose which loan transactions the government will allege are criminal with respect to each defendant.

First, although Count One lists the defendant who is the *borrower* for each identified loan, it does not specify which other defendants are alleged to have knowingly participated in the fraudulent loans in other capacities. The Indictment specifically alleges that different "members of the conspiracy participated in fraudulently obtaining loans in several ways" – certain defendants were borrowers who fraudulently obtained loans from lenders, while other defendants allegedly participated in the scheme by "among other things, (i) obtaining ownership of properties, (ii) assisting other borrowers in making false representations, (iii) receiving

fraudulent loan proceeds, (iv) obtaining and distributing rental income on the properties, and (v) assisting in efforts to prevent or dissuade a lender from collecting on a defaulted loan." Ind. ¶5(b). Count One, however, only identifies the transactions that a defendant participated in as a borrower and does not identify any transactions that defendants allegedly participated in through conduct other than borrowing.

Nor is it possible to piece together a list of fraudulent loan transactions that a particular defendant allegedly participated in by looking to the other Counts of the Indictment. For example, several defendants, Pinchus Glauber, Martin Kofman, Jacob Rubin, and Joel Rubin, are charged in the Count One conspiracy, but not listed as borrowers on any of the 22 loan transactions in Count One, and they are not charged in any of the substantive bank fraud or false statement counts either. The only specific loan transaction mentioned for any of these four defendants consists of an overt act related to one transaction each in furtherance of Count Two. *See* Ind. ¶¶ 15e, 15i, 15f, and 15h. With respect to Yehuda Rubin, the Indictment alleges that he "personally participated in *at least ten* of the particular fraudulent loans, in various roles, including as borrower, borrower's power of attorney, mortgage broker, distributor of fraudulent loan proceeds, and arranger of short sales." Ind ¶ 5(a) (emphasis added). Count One and the other counts of the Indictment, however, only identify 8 loan transactions in which Yehuda is alleged to have participated.

Secondly, the Indictment is also clear that whenever particular properties or false representations are listed, these are non-exhaustive lists. For example, in the Count One bank fraud conspiracy, the Indictment sets forth a list of properties and loans related to those properties, but states that "defendants fraudulently obtained loans in connection with numerous properties, including but not limited to" the properties described. Ind. ¶ 8. Similarly, it lists the

9

subjects of some of the misrepresentations made with respect to those properties, but disclaims that this is a complete list ("making misrepresentations concerning, among other subjects, the subjects below"). Ind. ¶ 8. The same is true of the substantive bank fraud counts, counts 3-11, as to which the Indictment lists the subject matter of some of the alleged false and fraudulent misrepresentations but states that the false representations "includ[e] but [are] not limited to" these subjects. Ind. ¶ 17. And in counts 12-15, the false statement charges, the defendants charged are alleged to have made false statements "including but not limited to" the statements listed in the Indictment at ¶ 19.

The Indictment simply fails to provide notice of which transactions and which misrepresentations the government will allege at trial were criminal as to each defendant. This is not a case where the discovery makes up for the lack of notice provided in the Indictment. To the contrary, the voluminous and largely unsearchable and unindexed discovery is a significant reason why defendants require a bill of particulars. Without adequate notice provided in the Indictment of the transactions and representations that each defendant must defend against at trial, defense counsel will have to sift through the mountains of discovery to try to guess in which transactions the government will allege that his or her client played a criminal role. Significantly, the loan transactions mentioned in the Indictment are not the only loan transactions defendants engaged in during the ten-year span of the Indictment, nor even the only loan transactions defendants engaged in with each other. A number of the defendants were in the real estate business, and obtained or were otherwise involved in loans as part of their real estate deals, some of which they entered with other family members. Thus, even assuming the government identifies the computer and hard copy documents that belong to individual defendants, unless the government provides a complete list of loan transactions it will allege at trial that defendant

participated in, defense counsel will be unable to use search terms and will have to sift through and scrutinize any and all loan transactions that may appear in his or her client's documents.

The set of organized PDFs for the properties mentioned in the Indictment, while helpful, does not ameliorate the need for particulars.[4] The government has not represented that the transactions represented in the PDFs are the universe of loan transactions it will allege were fraudulent at trial, or that the documents it included for a particular transaction contain all the alleged misrepresentations with respect to that transaction. Counsel cannot tell simply from looking at the documents whether the government will allege that a defendant's participation in a loan transaction is necessarily criminal. For example, the documents may show that a defendant received loan proceeds from a loan alleged to be obtained by fraud. Such receipt of loan proceeds could either be criminal, as the Indictment alleges it was in certain cases, or innocent. Defense counsel would have no way of knowing which it is alleged to be in a particular transaction simply from reviewing the provided documents.

With respect to the counts related to receipt of public benefits allegedly based on false reports and/or omission of information about their income, assets, or other financial information, the Indictment does not specify what false information was provided, or omitted from being provided, in order to obtain public benefits. Nor does it specify the dates or the documents on which this information was allegedly provided or withheld. To allow for counsel's efficient trial preparation, the government should identify the specific false reports or omissions on which it will rely at trial.

---

[4] The government produced PDF files on all but one of the properties mentioned in Paragraph 8 of Count One of the Indictment, and on three properties that are not mentioned in the Indictment. Cassidy Decl. ¶ 7.

Defendants will not be able to prepare for trial adequately unless the government discloses the requested particulars. There is ample authority for the district court to order the government to provide particulars in circumstances like this. In *Bortnovsky*, for example, the Court of Appeals held that particulars should have been provided where defendants were charged with submitting false claims for burglary losses, but the indictment failed to identify which of the burglaries were phony. 820 F.2d at 574-75. The court held that because the government had failed to identify the phony burglaries prior to trial, it had impermissibly shifted the burden of proof to defendants to prove that the remaining burglaries were real. *Id*. The court rejected the notion that the government had fulfilled its obligation to provide adequate notice merely by providing 4,000 documents that included materials regarding the burglaries that were ultimately proved to be fake. *Id*.

Relying on *Bortnovsky*, the district court in *United States v. Nachamie*, 91 F. Supp. 2d 565 (S.D.N.Y. 2000), a Medicare fraud prosecution involving false claims, held that the government had failed to comply with its obligation to provide adequate notice because, while it had provided over 200,000 pages of discovery relating to 2,000 Medicare claims, it had not informed defendants which claims were false and how they were false. 91 F. Supp. 2d at 571. The court ordered the government to provide numerous particulars about each false and misleading claim that it intended to prove at trial, including identifying each item on the form alleged to be false and misleading, the manner in which such item was allegedly false, and other details about the claim. *Nachamie*, 91 F. Supp. 2d at 574.

The need for particulars is even more acute here, where there are 14 defendants charged in loan-related counts that cover a span of ten years, and many hundreds of thousands of documents more than were involved in *Nachamie* or *Bortnovsky*. As in those cases, simply

providing voluminous discovery about loan transactions without identifying the specific misrepresentations and transactions that are alleged to be criminal does not satisfy the government's obligation to provide adequate notice to the defense. "A defendant faced with false statements charges should not have to waste precious pre-trial preparation time guessing which statements he has to defend against…when the government knows precisely the statements on which it intends to rely and can easily provide the information." *United States v. Trie*, 21 F. Supp. 2d 7, 21-22 (D.D.C. 1998) (in a false statement case, ordering government to provide information as to exactly what the false statements are and why they are false).

## CONCLUSION

For the reasons set forth herein, the Court should order the government to provide the particulars requested by Defendants.

Respectfully submitted,

Dated: October 23, 2015  
New York, NY

HAFETZ & NECHELES LLP

_____/s/_____  
Susan R. Necheles  
snecheles@hafetznecheles.com  
Kathleen E. Cassidy  
kcassidy@hafetznecheles.com  
10 East 40th Street, 48th Floor  
New York, NY 10016  
Tel. (212) 997-7400

*Attorneys for Defendant Yehuda Rubin*